**Jennifer Lynn HOBUS, David E. Braaten, Guardian Ad Litem for Jennifer Lynn Hobus, Grand Forks County Social Service Board, Assignee for Dian Hurt, and Dian Hurt, Plaintiffs and Appellees**

v.

**Michael James HOBUS, Defendant and Appellant.**

**Civ. No. 950052.**

Supreme Court of North Dakota.

Nov. 30, 1995.

Ruth A. Jenny, Legal Aid Association, UND School of Law, Grand Forks, and Diane M. Hausmann, Child Support Enforcement Unit, Grand Forks, for plaintiffs and appellees; argued by Tina Ryberg, third-year law student.

Kim Howard Sharp of Arnason Law Office, Grand Forks, for defendant and appellant.

SANDSTROM, Justice.

The Grand Forks district court entered a judgment declaring Michael J. Hobus' paternity and ordering him to pay past and future child support for Jennifer Hobus. Michael Hobus appeals from the child support portions of the judgment. He contends his obligation to support the child was terminated by appointment of a legal guardian; he voluntarily terminated his parental rights "although [he] did not follow the formalities;" and he was absolved of responsibility to support the child because of an agreement between his sister and the child's mother. If he has an obligation to support the child, he contends the amount of support set is wrong because it does not consider his responsibility to support other children living with him. We affirm.

I

Jennifer Lynn Hobus was born on August 17, 1983, to Michael Hobus (Hobus) and Susan Belk (Belk). Hobus is listed as Jennifer's father on her birth certificate.

In December 1986, Dian Hurt (Michael Hobus' sister) was granted guardianship of Jennifer Hobus. In February 1994, Dian Hurt (Hurt) began receiving AFDC benefits for the care of Jennifer. Grand Forks County social services sought a finding of Hobus' paternity and child support payments from Hobus.

This matter was heard in district court on January 19, 1995. In his answer and at the hearing, Hobus, acting pro se, admitted he was Jennifer's father. The remaining issues before the court were whether Hobus was obligated for future and past child support, and whether Hobus is obligated to pay for health insurance. Hobus contends he entered into an oral contract with Belk and Hurt, terminating his parental obligations to Jennifer. The date of the alleged oral contract is not clear in the record.

At the time of the hearing, Hobus resided with Lori Dohman and their three children. Hobus refused to furnish information concerning his co-habitee's income to the court for an accurate child support determination. The court found Hobus is Jennifer's father and ordered him to pay ongoing child support in the amount of $168 per month, based on an average monthly salary of $803. Hobus was also ordered to reimburse county social services $3,357 for support paid on his behalf from 1991 through January of 1995. The district court ordered Hobus to pay for the child's health insurance under the "usual statutory language" providing an obligor who can obtain medical insurance at no or minimal cost shall provide coverage for the child.

The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6 and N.D.C.C. § 28–27–01.

II

Hobus argues the child support award is clearly erroneous because he is no longer legally responsible to provide for the child. Hobus contends his parental responsibilities were severed when Hurt was decreed Jennifer's guardian. Hobus also contends he voluntarily terminated his parental rights and responsibilities in an oral agreement between Belk and Hurt.

A trial court's findings of fact will not be disturbed on appeal unless they are clearly erroneous. N.D.R.Civ.P. 52(a). To reverse, the reviewing court must be left with a definite and firm conviction a mistake has been made, even though some evidence

may support the decision. *In The Matter of the Guardianship of Braaten,* 502 N.W.2d 512, 517 (N.D.1993). A district court's conclusions of law are fully reviewable on appeal. *Throndset v. Hawkenson,* 532 N.W.2d 394, 397 (N.D.1995).

## A

Hobus claims his obligations to support his child ended when Hurt was named the child's legal guardian.

■■■ A parent of a child is obligated "to care for, protect, support, educate, give moral guidance to, and provide a home for the child." *Adoption of J.W.M., Matter of,* 532 N.W.2d 372, 379 (N.D.1995). N.D.C.C. § 30.1–27–09 states the guardian is "not legally obligated to provide from his own funds for the ward." Parental obligations are not dismissed by the appointment of a guardian, any more than they are by the presence of a stepparent. *See Mougey v. Salzwedel,* 401 N.W.2d 509, 512 (N.D.1987) (holding the legal obligation of a stepfather to support a child does not end the obligation of the child's natural father to provide support). On the contrary, the appointment of a guardian should indicate to the parent a need to better fulfill parental obligations. This argument is without merit.

## B

Hobus next contends he is not responsible to provide support for his child because he voluntarily terminated his rights.

■■■ North Dakota law does not provide for voluntary termination of parental rights without court order. N.D.C.C. § 27–20–44(1) provides a court *may* terminate parental rights when the child is abandoned, or deprived, or when written consent of the parent is acknowledged before the court.

■■■ Hobus did not present any evidence he complied with the statute in seeking to terminate his parental rights. *See Sprynczynatyk v. Celley,* 486 N.W.2d 230 (N.D.1992) (parental obligations not terminated where parent did not comply with statute). Fulfillment of the statutory factors for the proper termination of parental rights must be shown by clear and convincing evidence to termi-

nate those rights. *In the Interest of B.M.,* 335 N.W.2d 321, 323 (N.D.1983) (quoting *In Interest of J.A.,* 283 N.W.2d 83, 92 (N.D. 1979)). "[T]he best interest of the child is one factor to be considered in determining the necessity of terminating parental rights." *In Interest of D.S.,* 325 N.W.2d 654, 659 (N.D.1982). The best interests of the child are not always served by allowing parents to voluntarily terminate their parental obligations.

■■■ In addition, Hobus' motive for terminating his parental rights in his child at this time is suspect. Parents may not voluntarily terminate their rights in a child to avoid support payments. *Matter of Welfare of S.F.,* 482 N.W.2d 500, 503 (Minn.App.1992).

Hobus did not properly terminate his parental rights and continues to be obligated to support his child.

## C

Hobus contends that through an oral contract he bargained away his parental obligations.

■■■ Hobus' attempt to contract away his parental obligations is without effect. Parents who attempt to alter their parental responsibilities may be subject to criminal sanctions. "No parent may assign or otherwise transfer his rights or duties with respect to the care and custody of his child. Any such transfer or assignment, written or otherwise, is void." N.D.C.C. § 14–10–05. A person violating that section is guilty of a class A misdemeanor.

## III

Hobus argues the court erred in setting the amount of ongoing child support, and finding Hobus liable for child support already paid on his behalf.

## A

■■■ The court ordered Hobus to pay $168 per month, based on an average monthly salary of $803. That amount is delineated under the presumptively correct child support guidelines. Hobus did not offer any evidence challenging that presumption.

In setting his child support obligations, Hobus argues the district court erred by failing to consider his financial responsibilities for the three children living with him.

N.D.Admin.Code § 75–02–04.1–06 states the cost of supporting a child living with the obligor (Hobus), who is not also the child of the obligee, may be deducted from the obligor's net income under certain conditions. One of those conditions requires a computation which includes the income from the other parent living with the obligor. N.D.Admin.Code § 75–02–04.1–06(4). In this case, the computation requires evidence of Lori Dohman's income.

Hobus, however, refused to supply Lori Dohman's salary information, even after the district court explained to him it might well be to his advantage because it could reduce his child support obligations under the guidelines. The record reflects that evidence of Lori Dohman's salary was destroyed so it would not be available for the court.

The guidelines explicitly prevent the court from deducting the support Michael makes to the children who live with him if he fails to furnish the court with reliable evidence of the other parent's (Lori Dohman's) income. N.D.Admin.Code § 75–02–04.1–06(4). Accordingly, the district court calculated Hobus' child support payment based on his net monthly income, without deductions for support of children living with him. The district court properly assessed Hobus' ongoing child support responsibilities.

### B

■ The court also ordered Hobus to reimburse county social services for child support already paid on his behalf in the amount of $3,357. Even if a person is not the subject of any child support order, if the person is legally responsible to support a child and does not, the person is liable for the "reasonable value of physical and custodial care or support which has been furnished to the child by any ... county social service board." N.D.C.C. § 14–08.1–01. *See Throndset v. Hawkenson*, 532 N.W.2d 394, 397 (N.D.1995). The district court properly assessed Hobus' liability for child support already paid on his behalf.

### IV

We have considered the other arguments raised by the parties, and find them to be without merit. The judgment of the district court is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.