Kimberly Ann BELL, n/k/a Kimberly Engelstad, Plaintiff and Appellee,

v.

Kyle Kenneth BELL, Defendant and Appellant.

Civ. No. 950141.

Supreme Court of North Dakota.

Dec. 4, 1995.

Pamela J. Hermes of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellee.

Kyle Bell, pro se, defendant and appellant; submitted on brief.

SANDSTROM, Justice.

Kyle Bell appeals the property distribution in his divorce from Kimberly Bell, who is now known as Kimberly Engelstad. The district court awarded all of the remaining assets of the marital estate to Engelstad. Although we are hampered by the lack of a complete transcript, the record before us, and particularly Kyle Bell's own deposition testimony, is sufficient to convince us the district court's property distribution is not clearly erroneous. We affirm the judgment,

concluding Kyle Bell's dissipation of most of the marital estate, primarily through his illegal flight from justice, justifies the award of the remaining assets to Kimberly Engelstad.

## I

Kyle Bell (Bell) and Kimberly Engelstad (Engelstad) were married on October 9, 1993. They had one child together, Christopher Kyle Bell, who was born on January 17, 1994. Although it is unclear from the record, at some time after May 1994, Bell's parental rights in Christopher were terminated. The parties separated on about April 20, 1994, following Bell's arrest for gross sexual imposition upon children, and for use of minors in sexual performances. *See State v. Bell*, 540 N.W.2d 599 (N.D.1995). Before his arrest, Bell's father and grandmother were killed in a car accident. Bell received approximately $80,000 from the wrongful death action relating to the accident.

Bell posted $20,000 in bail, purchased a 1988 Buick in Fargo, and fled to Colorado, forfeiting the bond amount. Bell testified, after posting bond and paying attorney's fees, he left for Colorado with the cash. None of the $80,000 was used to support his wife or their child, Christopher, nor to pay the $34,406.64 Bell owed in child support arrearages for children born to other mothers before the marriage to Engelstad.

Bell was returned to North Dakota following his arrest in August 1994. He had none of the cash left. He subsequently pled guilty to the charges relating to the sexual abuse of his daughter and Engelstad's niece.

Engelstad sued for divorce on September 16, 1994. The divorce was tried on April 24, 1995. Engelstad appeared through counsel and in person; Bell appeared through counsel and by telephone deposition. The district court awarded all of the assets in the rule 8.3 listing, and certain debts Engelstad owed to her father, to Engelstad, and all other listed debts to Bell. The district court explained its property award with the statement, "Given the reprehensible, criminal conduct of the Defendant and the suffering and hardship he put this woman through, just and proper is 100 percent and 0."

Bell appeals from the district court judgment.

The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal is timely under Rule N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6 and N.D.C.C. § 28–27–01.

## II

Our review is hampered by the lack of a complete transcript of the trial. Engelstad argues this Court must affirm the trial court's decision as Bell has not provided a transcript of those proceedings for this Court's review. Bell contends he should not be prejudiced by his inability to pay for a transcript. Bell argues he cannot provide the Court with a transcript because he is indigent. He claims his indigence is due to his incarceration and the trial court's award of all the assets of the marriage to Engelstad. He further asserts his indigent status should qualify him for a waiver of the rule, or a transcript provided at state expense.

N.D.R.App.P. 10(b) places the responsibility on the appellant to order the transcript of the proceedings below, so this Court may fully understand the facts of the case and the trial judge's rationale in the decision. *Hieb v. Jelinek*, 497 N.W.2d 88, 90 (N.D.1993). Our rules do not provide for waiver of transcript fees nor a transcript at state expense for indigent defendants in civil cases such as this. *See* N.D.R.App.P. 10; *Sabot v. Fargo Women's Health Organization, Inc.*, 500 N.W.2d 889, 891 (N.D.1993).

In *Bye v. Elvick*, 336 N.W.2d 106, 109 (N.D.1983), the appellant said he was unable to afford the cost of a complete transcript. This Court said:

"Securing an adequate basis for allowing meaningful and intelligent appellate review underlies the procedural requirements of Rule 10, NDRAppP. Rules 10(f) and (g), NDRAppP, further illustrate that there are occasions where the absence of a complete transcript is specifically provided for. *See Durham v. Jones*, 698 F.2d 1179, 1180 (11th Cir.1983). We conclude that Elvick may proceed upon a partial transcript

without violating Rule 10(b), NDRAppP. We note, however, that unless the record on appeal allows for a meaningful and intelligent review of the alleged error, we will decline review of the issue."

*Bye* (footnote omitted). An appellant who does not furnish the transcript assumes the consequences and risks of failing to do so, as the appellant has the burden of demonstrating the findings of the trial court are clearly erroneous. *Rosendahl v. Rosendahl,* 470 N.W.2d 230, 231 (N.D.1991). Absent a transcript, this Court can only review the record and the briefs in making a " 'meaningful and intelligent' decision regarding the outcome of this case." *Hieb,* (quoting *Cullen v. Williams County,* 446 N.W.2d 250, 252-3 (N.D.1989)). This Court has said "when the record on appeal does not allow for a meaningful and intelligent review of the alleged error, we will decline to review the issues altogether." *Davis v. Davis,* 448 N.W.2d 619, 620 (N.D.1989).

■ We will not decline review in this matter. We were provided a partial transcript of the district court proceedings. The district court ordered a portion of the proceedings to be transcribed and that transcription to serve as the court's opinion under N.D.R.Civ.P. 52(a). In addition, due to his incarceration, Bell appeared in the district court by telephone deposition. A copy of his deposition is in the record. We are able to review his testimony through his deposition.

The record before us is sufficient to conclude the district court's distribution of property is not clearly erroneous.

### III

Bell argues North Dakota courts may not consider fault in property awards. Engelstad asserts a property division awarding every asset to a single party can be "equitable" if the misconduct is extreme.

■ In divorce proceedings, the trial court is obligated to "make such equitable distribution of the real and personal property of the parties as may seem just and proper,

..." N.D.C.C. § 14–05–24. The district courts should follow the Ruff–Fischer guidelines. *van Oosting v. van Oosting,* 521 N.W.2d 93, 95 (N.D.1994) (citing *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966)). The goal is to divide the property equitably based on the circumstances of the case. *van Oosting* at 96. The trial court must include all of the parties' property in the marital estate, "inherited or otherwise." *van Oosting.* While a property division need not be equal to be equitable, "substantial disparity" must be explained. *van Oosting.* One factor to be considered in property division is the "conduct of each [party] during the marriage." *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107, 111 (1952) (affirming a trial court property division based, in part, on the misconduct of the husband).

■ The trial court's property division is a finding of fact and will not be set aside on appeal unless it is clearly erroneous. *van Oosting; Heley v. Heley,* 506 N.W.2d 715, 718 (N.D.1993). The clearly erroneous standard is met on appeal when this Court, reviewing the entire record, "is left with a definite and firm conviction a mistake has been made," even if some evidence supports the finding. *van Oosting; Rueckert v. Rueckert,* 499 N.W.2d 863, 868 (N.D.1993).

### A

Although it is hard to imagine a property award with a more "substantial disparity" than one awarding 100 percent of the assets to one spouse, and virtually all of the debt of the marital estate to the other, the circumstances of this case are unusual. The total assets of the marital estate, as itemized on the rule 8.3 listing, are approximately $7,580.75.[1] Bell testified his award from the wrongful death action was approximately $80,000. Bell returned to North Dakota without any of the $80,000.

The total debt in the listing is $36,006.65. Of that, $34,406.65 is attributable to late child support payments owed by Bell for the support of children born to other mothers before

---

1. The value of some items are listed by both Bell and Engelstad as "unknown." The likely potential range of values, however, would not affect our decision in this case.

the marriage. At least $25,000 of delinquent child support payments are undisputed by Bell. Bell has not made any payments on his child support debt since at least May 1994. Bell has not provided Engelstad or Christopher with any support since at least May 1994.

### B

 In a very short time, Bell dissipated the biggest asset of the marriage, the $80,000 award from his father's wrongful death action. Misconduct during the marriage is a proper factor to consider in property distribution. *Behm v. Behm,* 427 N.W.2d 332, 337 (N.D.1988). Although some members of this Court would limit consideration of misconduct to economic misconduct, *Behm,* both economic and non-economic misconduct are abundantly documented here.

In effect, Bell distributed to himself around 90 percent of all marital assets by taking for himself all of the compensation from the wrongful death action. Following that self-distribution, he dissipated the assets without regard to his wife, his child, or any of the other children for whom he owes child support.

Because of this self-distribution, and the total disregard Bell exhibited for his family and other child support obligations while squandering the assets of the marriage, we conclude the district court's property distribution was not clearly erroneous.

### IV

The judgment of the district court is affirmed.

VANDE WALLE, C.J., and MESCHKE and NEUMANN, JJ., and ROBERT W. HOLTE, District Judge.

ROBERT W. HOLTE, District Judge, sitting in place of LEVINE, J., disqualified.